W. H. Truesdale, Receiver, Appellant, v. O. B.
Jensen.

1 **Right to an Open Railroad Crossing Not Absolute.** The
fact 'that a landowner must cross the track to reach a highway
and his pasture, does not entitle him to an open crossing, when its
2 construction would make collision with stock probable, and create
much danger in the operation of the railroad.

**Right to Permit Gates to Remain Open.** When it appears
that serious accidents to stock are threatened if the gate is left open,
the owner may be ordered by injunction to keep it closed except
3 when the crossing is being actually, and in good faith, used by pass-
ers, or to drive stock.

*Appeal from Webster District Court.*—Hon. J. L.
Stevens, Judge.

Tuesday, May 22, 1894.

Action in equity to enjoin the defendant from
leaving open the gates of a private railway crossing.
The defendant asks that he be furnished with an open
crossing. From the decree rendered after a hearing on
the merits, both parties appeal, the appeal of plaintiff
being first perfected.—*Affirmed on defendant's appeal.*
*Reversed on plaintiff's appeal.*

*R. M. Wright* for appellant.

*C. H. Kelley* for appellee.

Robinson, J.—The plaintiff is the receiver of the
Minneapolis & St. Louis Railway Company, and the
defendant is the owner of a farm containing about three
hundred and forty-eight acres, through which the rail-
way of that company is constructed. The general
course of the railway across the farm is from the south-
west to the northeast. The house, barn, and barn-

yards of the farm are located a short distance east of the railway, while west of it, is the larger part of the farm, including nearly all of it which is cultivated. The railway right of way is fenced, and the portions of the farm separated by it are connected by three private crossings, which are closed with gates. The middle one of these is west of, and near, the house and barn, and is the one in controversy. The plaintiff claims that the defendant habitually leaves it open; that his cattle are frequently upon it; and that, when left open, it is dangerous to the stock, and to persons and property transported over the road; and that it should be kept closed, when not necessarily open for use. The defendant admits that he has at times left it open, temporarily, but alleges that it has not been left open by him more than his necessities, and a reasonable use of it, warranted. He further alleges, by way of counterclaim, that he is entitled to an open crossing, and that, in consideration of being permitted to use a portion of his land for snow fences, the plaintiff agreed to furnish him such a crossing. He asks that the plaintiff be required to construct cattle guards, and maintain an open crossing. The district court adjudged that neither party was entitled to relief, and taxed the costs to plaintiff.

I. The agreement for an open crossing, upon which the defendant relies, is not established by the evidence. He claims that the general road master of the plaintiff wrote a letter to a "foreman" named Smith, to tell defendant that, as there was so much trouble about the crossing gates, "we will put him in cattle guards for a fence for one winter—snow fences." The letter was not produced, and the road master denies having written it. Furthermore, it is shown that no authority was given to any one to make such an agreement, and that the defendant had given to the plaintiff the privilege of maintaining snow fences on

his land, for which he was to pay a reasonable compensation. The claim of defendant that an open crossing is reasonably necessary to a proper use of his farm, and that plaintiff should therefore provide one, is entitled to more consideration. His building site was selected, and a part of his buildings were on it, before the railway was constructed. The highway nearest to his buildings is on the east side of his farm. He is prevented from reaching it, excepting in the winter season, by a stream which he can cross only when it is frozen. He can pass from his house to a highway, in ordinary times, only by crossing the railway of plaintiff. When the crops are harvested, he permits his stock to run in the corn fields west of the railway, and it uses the crossing in question to go to the field from the barnyard, and to return. To open and close the gates whenever the crossing is used, involves much care and labor, and an open crossing would be of great benefit to the defendant.

It is the duty of the plaintiff to furnish to the defendant adequate means of crossing the railway. Code, section 1268. It was said in *Gray v. R'y Co.*, 37 Iowa, 125, that, "where a railway runs between the residence of a citizen and the only means he has of reaching a highway, he has a right to insist that an open crossing shall be provided for him, {by means whereof he may reach the highway without stopping to open gates or remove bars." That rule was approved in *Boggs v. R'y Co.*, 54 Iowa, 440, 6 N. W. Rep. 744. Whether the right to an open crossing exists in all cases where the railway runs between the residence of the landowner and the only accessible highway, we need not decide. The location and character of such a crossing must be determined with a due regard for all the interests involved in its construction and maintenance. Among these are the reasonable use which the landowner desires to make of it, its expense,

and the effect it will have upon the operation of the railway, and the safety of life and property. The landowner can not dictate the kind of crossing he will have, nor the place where it shall be located. In this case, the defendant asks that the crossing near his buildings be made an open crossing. It appears that the railway track at that point is nearly on a level with the surface of the land, but there is a descending grade on each side of it, so near as to make it difficult to stop trains for the crossing, and to start them readily. There is a curve in the railway on each side of the crossing, and a short distance south of it, a cut, upon the banks of which are snow fences. In consequence of the grades, curves, cut, fences, and perhaps for other reasons, it is difficult for trainmen to see animals on the crossing in time to avoid a collision. We are satisfied that an open crossing at grade would interfere, to an unnecessary extent, with the proper operation of trains on the railway, and would be a source of much danger to persons and property transported over it. An over-crossing would involve long approaches, and much expense; and an under-crossing would be liable to be wet in summer, and filled with snow in the winter. We conclude that the necessity for an open crossing at the place now used for a crossing, near the buildings of plaintiff, is not shown to be so great as to require one to be constructed there, in view of the objections stated.

II. The evidence shows that, at times, when there are no growing crops in the fields west of the railway, the defendant permits his stock to run in those fields, and allows the gates of the crossing near his house to remain open. At such times, the stock frequently stops on the crossing, and interferes with the running of trains. Serious accidents have been threatened from that cause, and barely avoided, on several occasions. The defendant contends that he has left the

gates open only when a reasonable use of his premises required him to do so, but we think the evidence does not sustain the claim.   While it is true, to permit the gates to remain open, and thus to allow his stock to have an unobstructed passageway from its yards to the fields, and from the fields to water, would save him some care and labor, yet the interests jeopardized by such a course are so great that we think it should not be permitted. He will be required to keep the gates of the crossing closed at all times when any stock on his farm and subject to his control, would otherwise have free access to the crossing, excepting while the crossing is being actually used, in good faith, by persons who are passing over it, or are driving stock over it.

III.   As has been stated, the crossing involved in this litigation is the one west of, and near, the house and other farm buildings of the defendant.   The conclusion we have reached is without prejudice to the right of defendant to demand an open crossing at another place.   *So much of the decree of the district court as is involved in the appeal of the defendant is* AFFIRMED, *and so much as is involved in the appeal of the plaintiff is* REVERSED.